**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 17 2014, 10:55 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE INDIANA DEPARTMENT OF CHILD SERVICES:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF:  J.M., A CHILD IN NEED OF SERVICES, | ) |
| | ) |
| | ) |
| T.M., | ) |
| | ) |
| Appellant/Respondent, | ) |
| | ) |
| vs. | )   No. 49A02-1402-JC-94 |
| | ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) |
| | ) |
| | ) |
| Appellee/Petitioner | ) |
| | ) |
| and | ) |
| | ) |
| CHILD ADVOCATES, INC. | ) |
| | ) |
| Appellee/Guardian Ad Litem | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
Cause No. 49D09-1309-JC-16813

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

J.M. was born on September 1, 1998, the child of Appellant/Respondent T.M. ("Father") and E.H. ("Mother"). In early September of 2013, Father had recently been awarded full custody of J.M. when Appellee/Petitioner the Indiana Department of Child Services ("DCS") became aware of reports that Father had been physically abusing J.M. DCS filed a petition to have J.M. declared a child in need of services ("CHINS"). Based on Father's and Mother's admissions, the juvenile court adjudicated J.M. to be a CHINS. The juvenile court awarded wardship of J.M. to DCS, suspended Father's visitation, ordered that Father submit to drug testing and participate in counseling, and temporarily placed J.M. in Mother's residence. Father appeals from the juvenile court's disposition, arguing that the juvenile court has impermissibly modified the award of full custody of J.M. to Father and Father's admissions were insufficient to support a finding that J.M. is a CHINS. We affirm.

## FACTS AND PROCEDURAL HISTORY

In late August of 2013, J.M. was residing with Father, who had recently gained full custody of J.M. from Mother. On or about September 2, 2013, J.M. ran away from Father's residence. J.M. returned to Mother's home on September 7, 2013, and Mother returned J.M. to Father two days later. Later that day, Mother received a telephone call from J.M. during which he told her that Father had punched him in the face. J.M. also told DCS family case manager Nola Hunt ("FCM Hunt") that Father had punched him in the stomach two weeks

prior, he had observed Father using cocaine in his home, and Father had another address where he grew marijuana. J.M. indicated that he did not feel safe with Father and that Father was using J.M.'s name to conduct business.

On September 11, 2013, DCS filed a verified petition seeking to have J.M. declared a CHINS. Also on that day, the juvenile court held an initial hearing, appointed counsel for Mother and Father, and appointed Brittany D'Ambra as guardian ad litem ("GAL") for J.M. Additionally, the juvenile court awarded wardship of J.M. to DCS and ordered that J.M.'s placement of temporary visitation with Mother continue, J.M. receive individual counseling, that J.M. be referred to an education liaison.

On December 17, 2013, the juvenile court held a hearing on the CHINS petition. Following the hearing, the juvenile court adjudged J.M. to be a CHINS, based upon admissions by Mother and Father. Specifically, Father admitted that "[J.M.], son of [Mother] and [Father], is a child in need of services because [Father] believes [J.M.] is dealing in drugs and firearms and that the family needs services that are not accessible without the coercive intervention of the court." Appellant's App. p. 44.

Mother admitted that

On or about September 11, 2013, [DCS] determined by its [FCM], Nola Hunt, this child to be a [CHINS] because, the son's relationship with father is strained and he does not want to live with father. The family is in need of therapy to address their relationship. The coercive intervention of the Court is needed because prior non coercive efforts have exacerbated issues.

Appellant's App. p. 45.

GAL D'Ambra recommended that J.M. continue his placement with Mother, noting

3

that she did not have any concerns regarding that placement, J.M. was not having any behavioral problems at school and was in a mentoring program, and J.M. stated that he did not want to see Father. DCS recommended that J.M. continue in his placement with Mother because a drug screen for J.M. had come back negative and it had no concerns with the placement. At the conclusion of the CHINS hearing, the juvenile court continued J.M.'s temporary placement with Mother, ordered individual counseling and continued tutoring, and noted that J.M. had had only one referral from school during the current semester and none for delinquency.

On January 16, 2014, the juvenile court held a dispositional hearing. During the hearing, the juvenile court ordered that Father submit to a drug screen, and, despite his admission that J.M. is a CHINS, denied that he had struck J.M. Following the dispositional hearing, the juvenile court (1) granted DCS wardship of J.M., (2) suspended Father's parenting time with J.M., (3) ordered Father to submit to drug testing and participate in home-based counseling, and (4) maintained J.M.'s temporary placement in Mother's home. The juvenile court's dispositional order, issued on January 16, 2014, provides, in part, as follows:

> A. Wardship and supervision. The child[] should be under the temporary supervision of [DCS] for the following reason(s):
> 1. To protect [J.M.].
> III. PLAN FOR PERMANENCY.
> A. The permanency plan for [J.M.] at this time is reunification with parent(s).
> IV. ORDERS
> A. Placement. The responsibility for placement and care is granted to [DCS], with authorization for the following placement(s): [J.M.] in temporary home trial visit.

4

Appellant's App. p. 14.

## DISCUSSION AND DECISION

### I. Whether the Juvenile Court Impermissibly
### Modified the Circuit Court's Custody Order

Father contends that the juvenile court exceeded its authority insofar as its order allegedly awarded custody of J.M. to Mother. DCS counters that (1) the juvenile court properly exercised its authority pursuant to Indiana Code section 31-30-1-1 and (2) the juvenile court did not, in fact, modify the previous custody order. We agree with DCS.

Indiana Code section 31-30-1-1 provides, in relevant part, as follows:

A juvenile court has exclusive original jurisdiction, except as provided in sections 9, 10, 12, and 13 of this chapter, in the following:
…
(2) Proceedings in which a child, including a child of divorced parents, is alleged to be a child in need of services under IC 31-34.
(3) Proceedings concerning the paternity of a child under IC 31-14

Moreover, pursuant to the Indiana Code section 31-34-20-1(a),

if a child is a child in need of services, the juvenile court may enter one (1) or more of the following dispositional decrees:
(1) Order supervision of the child by the department … [or]
(3) Remove the child from the child's home and authorize the department to place the child in another home or shelter care facility. Placement under this subdivision includes authorization to control and discipline the child.

Finally, and as previously mentioned, the juvenile court's dispositional order made it abundantly clear that the visitation placement with Mother was "temporary" and that the permanency plan for J.M. was reunification with parents, with no mention of modification of the existing custody order. Appellant's App. p. 14. Pursuant to specific statutory authority,

5

the juvenile court assumed exclusive jurisdiction over the CHINS case and ordered the removal of J.M. from Father's home for temporary placement in Mother's, which placement the juvenile court made clear was temporary. We conclude that the trial court did not impermissibly modify the previously-entered order awarding custody of J.M. to Father.

## II. Whether Father's Admission Supports the Juvenile Court's Disposition

Father objects only to the juvenile court's order that he participate in home-based counseling and submit to drug testing, arguing that his admission does not support such a disposition. Pursuant to Indiana Code section 31-34-19-10,

> (a) The juvenile court shall accompany the court's dispositional decree with written findings and conclusions upon the record concerning the following:
>     (1) The needs of the child for care, treatment, rehabilitation, or placement.
>     (2) The need for participation by the parent, guardian, or custodian in the plan of care for the child.
>     (3) Efforts made, if the child is a child in need of services, to:
>         (A) prevent the child's removal from; or
>         (B) reunite the child with;
>     the child's parent, guardian, or custodian in accordance with federal law.
>     (4) Family services that were offered and provided to:
>         (A) a child in need of services; or
>         (B) the child's parent, guardian, or custodian;
>     in accordance with federal law.
>     (5) The court's reasons for the disposition.
> (b) The juvenile court may incorporate a finding or conclusion from a predispositional report as a written finding or conclusion upon the record in the court's dispositional decree.

### A. Counseling

Father argues that his admission does not support an order that he participate in home-based counseling. As previously mentioned, however, Father admitted, inter alia, that "*the family* needs services that are not accessible without the coercive intervention of the court."

Appellant's App. p. 44 (emphasis added). We conclude that this admission is sufficient to support an order that Father participate in home-based counseling with Mother and J.M.

## B. Drug Testing

Father argues that his admission does not support an order that he submit to drug testing. Moreover, although the juvenile court did make some findings, it made no specific written findings related to Father's alleged drug use.

> As to the issues covered by the findings, we apply the two-tiered standard of whether the evidence supports the findings, and whether the findings support the judgment. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). But we review the remaining issues under the general judgment standard, under which a judgment "will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id.* (internal quotation marks omitted).

*In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014).

> While special findings entered sua sponte control as to the issues upon which the court has found, they do not otherwise affect our general judgment standard of review, and we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court.

*C.B. v. B.W.*, 985 N.E.2d 340, 344 (Ind. Ct. App. 2013).

Looking to the evidence in the record, we conclude that the juvenile court's order that Father submit to drug testing is not against the facts and circumstances before the court. Mother and J.M. both reported that they have seen Father using cocaine, and J.M. reported that Father had another address where he grew marijuana. At the September 11, 2013, initial hearing, the juvenile court ordered Father to submit to a drug screen, which he refused to do. In short, the record supports an inference that Father is involved in drugs and/or drug use, and we therefore cannot say that the juvenile court's order that Father submit to drug

7

screening is unreasonable.

The judgment of the juvenile court is affirmed.

NAJAM, J, and MATHIAS, J., concur.